# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| United States of America | ) | | | | |
|---|---|---|---|---|---|
| v. | ) | | | | |
| EMANUEL WOLFE XX/XX/2001 | ) | Case No. | 20 | MJ | 136 |
| | ) | | | | |
| | ) | | | | |
| | ) | | | | |
| | ) | | | | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 19, 2020 _____ in the county of _____ Milwaukee _____ in the

_____ Eastern _____ District of _____ Wisconsin _____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. Section 922(a)(6) and 924(a)((2) | Aiding and abetting another person's false statement to a licensed firearm dealer that was material to the lawfulness of a firearm sale |

This criminal complaint is based on these facts:

See Attachment Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Sworn by telephone; submitted by email
under Rule 4.1.
~~Sworn to before me and signed in my presence.~~

ATF Task Force Officer Rodolfo Ayala
*Printed name and title*

Date: _____ May 21, 2020 _____

City and state: _____ Milwaukee, Wisconsin _____

Hon. William E. Duffin
*Judge's signature*

Hon. William E. Duffin
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR AN ARREST WARRANT AND A CRIMINAL COMPLAINT

I, Deputized ATF Task Force Officer and MPD Police Officer Rodolfo Ayala, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of a criminal complaint and arrest warrant for EMANUEL WOLFE.

2.      I am a Police Officer for the Milwaukee Police Department and am a state certified law enforcement officer currently assigned to the Milwaukee Police Department's Special Investigations Division-Alcohol, Tobacco, Firearms and Explosives Violent Impact Team and involved in the investigation of narcotics trafficking as well as individuals prohibited from the possession of firearms.

3.      Your affiant has worked full-time as a law enforcement officer for the past seventeen (17) years; and your affiant has been a deputized, full time Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives for the past nine (9) years.  Your affiant is currently assigned to the Chicago Field Division-Milwaukee field office.

4.      Your affiant has received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons. Your affiant has been trained regarding firearm offenses and has arrested individuals for firearms related offenses including both federal and state criminal violations.  I have also investigated drug trafficking offenses at the state and federal level and have been involved in arresting individuals who violate the State of Wisconsin and/or the federal narcotics laws included in 21 U.S.C. § § 841 and 846.  I have worked with local, state and federal law enforcement agencies, investigating the possession, use, and trafficking of controlled substances and weapons in the State of Wisconsin.

5.     Your affiant has participated in the execution of numerous search warrants in which weapons and/or narcotics were seized. Your affiant is familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking.

6.     Your affiant is professionally trained in the use of firearms and your affiant has experience working with confidential informants, citizen informants and other sources of information.

7.     Your affiant has received training in the investigations of narcotics to include but not limited to possession of a controlled substance, possession of a controlled substance with intent to deliver, and the manufacturing/delivering of a controlled substance. Your affiant has recovered and purchased numerous narcotics to include marijuana, cocaine salt, cocaine rock, heroin, oxycodone, and MDMA.

8.      Your affiant worked as an undercover police officer in the City of Milwaukee for over 4 years and made over 100 buys from different drug dealers. Your affiant has conducted over one-hundred interviews of drug dealers and drug users over the course of your affiant's career. Your affiant has been involved in over one hundred investigations where narcotics (marijuana, cocaine, heroin, etc.) were recovered.

9.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

10.     Throughout this affidavit, reference will be made to law enforcement. Law enforcement are those federal, state, and local law enforcement officers who have directly

2

participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

## **<u>PROBABLE CAUSE</u>**

11.     Your affiant knows, from his training and experience that individuals who cannot legally purchase firearms because of previous felony conviction(s) or because they are underage will often recruit "straw purchasers" to illegally obtain firearm(s) on their behalf. These "straw purchasers" are often complicit with the intent to conceal the identity of the intended recipient of the firearm. These types of transactions are commonly conducted for financial gain of the "straw purchaser" or as the result of a relationship (familial/romantic/platonic or economic) between the true purchaser and the straw purchaser. When a firearm is recovered by law enforcement, the firearm information is generally submitted for tracing information.  This tracing information can help to identify the origin of the firearm. A common indicator of firearm straw purchasing can be the existence of a relatively short time span between the purchase of a firearm and its ultimate recovery by law enforcement during a crime or during a criminal investigation. Under these circumstances, the short "time to crime" serves as an investigative lead.

12.     Your affiant is currently investigating Emanuel WOLFE and others regarding the straw purchase of firearms. I am providing this affidavit in support of a criminal complaint charging WOLFE with aiding and abetting another person's false statement to a licensed firearm dealer that was material to the lawfulness of a firearm sale, in violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and 2. Based on the facts set forth in this affidavit, I believe there is probable cause to arrest EMANUEL WOLFE and charge him with this criminal violation.

13.     On January 19, 2020, Emanuel WOLFE was involved in a car accident in Milwaukee, Wisconsin, that required him to be taken to the hospital by ambulance for

3

treatment. When Milwaukee Police Department (MPD) officers responded to the scene, they recovered a Glock, model .380 caliber firearm bearing serial number ADSG919 in the car driven by WOLFE. At the time the firearm was recovered, WOLFE was eighteen years old (DOB xx/xx/2001). The firearm was loaded with eight hollow point aluminum cased rounds. Also recovered in the car driven by WOLFE were 3.53 grams of cocaine base, 27.1 grams of marijuana, oxycodone pills, and 6.38 methamphetamine, $4,629 in cash, and a cell phone.

14.     I interviewed WOLFE on April 22, 2020, regarding how he came to possess the Glock recovered from his car. At the time, he was in state custody on state charges regarding two counts of Felony bail jumping and CCW. WOLFE was advised of his rights, which he waived prior to speaking with me. WOLFE stated that he got the Glock from the Wisconsin Firearms Training Center. I know that the Wisconsin Firearms Training Center is a licensed firearm dealer and therefore could not sell the Glock to WOLFE as he was under age 21 and therefore ineligible to purchase the Glock pursuant to Title 18, United States Code, Section 922(b)(1).  When I asked WOLFE how it could be that he bought the firearm, WOLFE explained and that he went with someone he knows (subsequently identified as CW) to the gun store so that  CW could purchase the firearm for him.

15.     WOLFE further stated that he picked out the store to buy the firearm, and that he "technically" paid for the Glock as WOLFE gave CW "500 and some change" to purchase the firearm. WOLFE further stated that he (WOLFE) picked out the Glock because it was small and concealable. WOLFE stated that he gave CW an additional $200 for purchasing the firearm for him. WOLFE stated that he did not purchase the firearm himself because he was not old enough. WOLFE stated that the firearm was paid for in cash.

4

16.     As part of my investigation, I was able to confirm that CW purchased the Glock, model #42, .380 caliber (serial#ADSG919) pistol on January 15, 2020, from Wisconsin Firearms Training Center.

17.     I also reviewed surveillance video from the Wisconsin Firearms Training Center from January 15, 2020, and the video revealed that both CW and WOLFE were at Wisconsin Firearms Training Center together when CW purchased the Glock. The video also indicated that they both arrived in the same vehicle, were together in the store, and left together once the firearm was purchased. I also reviewed the ATF 4473 form that CW completed in connection with the firearm purchase. On the form, CW falsely stated that he was the purchaser of the firearm. He did not indicate that he was actually purchasing it for WOLFE. This consisted of deception of a material fact, i.e. that WOLFE was the actual purchaser and eighteen years of age, and this fact would affect the legality of the transfer of the firearm from the dealer to the defendant.

18.     Therefore, based on my training and experience, there is probable cause to believe that WOLFE used CW as a straw purchaser of the firearm for WOLFE. Also of significance to my investigation is the fact that the firearm was recovered four days after it was purchased (January 19, 2020) and that it was recovered by law enforcement during a drug trafficking investigation.

19.     Subsequently, WOLFE, who was in state custody for two counts of felony bail jumping and carrying a concealed weapon, posted $750 cash bail on April 28, 2020, and he was released from custody.

20.     On May 18, 2020, WOLFE was identified as a suspect in a shooting that involved CW. On May 19, 2020, law enforcement observed WOLFE's vehicle in the rear of xxxx North 7th St. Officers conducted a "knock and talk" at the North St. address and a female came to the door.

5

Law enforcement asked for WOLFE. Law enforcement then heard WOLFE state that he would come down, and that he just needed to get dressed. WOLFE then came to the door and stepped out. MPD arrested WOLFE. Law enforcement asked the female for consent to search, which she granted. Officers found a 9 mm semiautomatic firearm in the residence. The investigation is ongoing regarding the purchase information for the recovered handgun.

## CONCLUSION

21.     Based on the foregoing, I request that a criminal complaint and arrest warrant be issued charging WOLFE with aiding and abetting another person's false statement to a licensed firearm dealer that was material to the lawfulness of a firearm sale, in violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), and 2.